ILLINOIS CENTRAL R. CO. *v.* THREE FOOT BROS. & CO.

[83 South. 635, In Blanc. No. 20468.]

1. EVIDENCE. *Books of railroad company.*
   In a suit against a railroad company for cotton destroyed by fire while in its possession as carrier, it was error to exclude the books of the railroad company which tended to show that the cotton was delivered before the fire to a compress company according to custom and a bill of lading which constituted the compress company the agent of the shipper to receive shipment.

2. APPEAL AND ERROR. *Review. Truth of evidence.*
   The supreme court on appeal will accept as true evidence for the defendant which the trial judge improperly excluded and then directed a verdict for the plaintiff.

3. CARRIERS. *Freight. Destruction by fire. Peremptory instruction.*
   In a suit against a railroad company for the value of cotton destroyed by fire while in its possession as a carrier; where the evidence tended to show that the cotton had been delivered to a compress company, the shipper's agent to accept delivery, before the cotton was burned, it was error to give a peremptory instruction for the plaintiff, shipper.

APPEAL from the circuit court of Marshall county. HON. J. L. BATES, Judge.

Suit by Threefoot Bros. & Co. against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Wells, May & Sanders,* for appellant.

First: Does the evidence show that the cotton was delivered to the compress company? Second: If the cotton was delivered, can the appellant be held liable for its destruction by the compress fire? (1) The record is short and we believe no good purpose can be subserved by copying excerpts from the testimony of the witnesses. We believe that a fair examination of the testimony, however, will disclose unmistakably, that the cotton in question arrived at Holly Springs, and was delivered by the railroad company, according to the bill of lading, that is, to the compress company, in whose care it was consigned. The testimony of the witnesses leaves no room for doubt, that the long established custom, as well as the contract between the compress company and the railroad company, made delivery of the cotton to the side track of the compress company delivery to the compress. The compress manager testified to this, and that he received notice of the cotton being delivered. The railroad agent, Pinkston, testified that certain records, which were books of original entries in his office showed the arrival of the cotton at Holly Springs, and the delivery thereof to the compress company. He also testified to this from his original independent recollection, and moreover produced the books showing the signature of the manager of the compress company receipting for this cotton. While the railroad agent did not make the entries himself, he says they were entries in books of original entry regularly and properly kept in his office, under his supervision made at the time of the transaction in question. In other words, everything was shown in reference to the keeping of these books, which this court said in *Railroad Company* v. *Provine,* 61 Miss. 288, was necessary to be shown to predicate the introduction of such books. In the

Provine case the necessary facts were not shown to warrant the introduction of the books which were offered in that case, but the court said that if such testimony had been offered or given, showing the regularity of the keeping of the books, etc., that they would have been admissible at the suit of a shipper of cotton to charge the railroad company with the receipt of the cotton. If such testimony would be good in the case of shipper against the railroad to show delivery to the railroad, it would be equally good to show delivery by the railroad company to the consignee and thus relieve the railroad company of liability. But as we have shown the delivery of the cotton was established otherwise, than by the books. It was shown by the railroad company to the consignee and thus relieved the Railroad Company of liability. But as we have shown the delivery of the cotton was established otherwise than by the books. It was shown by the testimony of Hammon, that he had notice of the arrival of the cotton, by his signature to the books, which Pinston testified to, showing of Pinkston to the effct, that he personally remembers that the actual cars and cotton as entered on the books by his surbordinates were placed on the tracks of the compress company. This was certainly sufficient to carry the case to the jury on the question of delivery of the cotton, if delivery on a side track in a car constituted a delivery. And that brings us to the next question in the case. Before proceeding to discuss that question, however, we call the court's attention to the following cases on the question of the admissibility of books of original entry in various kinds of cases without the personal testimony of the party making the entries. *Post* v. *Kennerson,* 52 L. R. A. in the Note page 590; *West Virginia Architect & Builders* v. *Stewart,* 39 L. R. A. (N. S.) 899. (2) The liability of a carrier, as such on a contract of carriage ceases

on delivery, and delivery is complete when car is placed on side track at disposition of the consignee. *Brennfleck* v. *M. & O. R. R. Co.*, 63 So. 954, (Ala.).

Delivery of a carload shipment of goods is complete when the carier has placed the car upon a side track for unloading by the consignee and an agent of the latter, after verifying the goods in the car, has signed and delivered to the carrier a receipt in full therefor previous to unloading. *Kennedy & Co.* v. *Atl., etc., R. R. Co.*, 122 Ga. 365, 50 S. E. 132.

A delivery of the contents of a car by the carrier to the consignee is effected by placing car on delivery track. *Rothschild* v. *N. Pac. R. R. Co.*, 40 L. R. A. (N. S.) 773, and monographic note thereto. For a full statement of the rule in such cases, see 4 R. C. L., section 279, subject "carriers" page 824: See also *Greggs* v. *Illinois Central Railroad Co.*, 37 Am. State Reports, page 238, and note thereto.

The authorities quoted abundantly establish the rule that in case of special contract of carriage or in accordance with customs, if a carload of bulky freight is placed on a delivery or side track, and the consignee notified, the delivery is complete and the liability of the carrier as such ceases. The facts in this case, we respectfully submit, bring this case squarely within that rule. Here the cotton was delivered to compress on its side track, and the compress notified and afterwards the cotton was destroyed by a fire originating in the compress company, and through no fault of the railroad company. The shipper of the cotton made the compress company its agent to receive the cotton by consigning the cotton to the care of the compress company, and when the cotton was delivered to this agent the contract of carriage was complete, and the liability of the carrier on the contract ceased.

We, therefore, respectfully submit that it was error for the court to exclude the evidence of the witnesses

Pinkston and Smith, and it was error to give the peremptory instruction for the plaintiff. Had the evidence of the defendant not been improperly excluded, the defendant would have been entitled to a peremptory instruction.

We respectfully submit the judgment of the court below ought to be reversed.

*Lester G. Fant,* for appellee.

The first assignment of error is that the trial court erred in excluding the testimony of witness Pinkston The court simply followed in excluding this, the long line of decisions in Mississippi that have started with *Railroad Company* v. *Provine,* 61 Miss. 288, and the case of *Wooten* v. *The Railroad Company,* 98 Miss. 322. The facts in this Wooten case are absolutely on all fours with the facts in the case at bar. All the records that were attempted to be proven were made by Ollie Quiggins, who at the time of the trial according to the record, was living in Memphis, forty-five miles from the place of trial, and Roderick McDermott who at that time was in training camp in the East. No effort was made to take their deposition, nor to have them present at the trial. In quoting from the statement of facts at page 323 of the 89th Miss. we find the following:

"Over the objection of appellant, appellee was allowed to introduce in evidence its interchange records kept by it' in its Meridian office which showed that the car was, upon its arrival at Meridian, promptly placed on appellee's interchange track and billing therefor delivered to the connecting carrier. Appellee's clerk at its Meridian office, as a witness over objections of appellant testified that if anything wrong existed at the time the car was interchanged, the appellee's records would have shown it; that the entries on the

record in regard to the car were made at the time of the transaction by another, appellee's interchange clerk, who was not at the time of the trial in the service of appellee, but was absent from the state; and that witness knew nothing about the car save what he learned from the records, and the records had always been accepted by both carriers as correct. Appellee, over objection of apellant, also introduced as a witness in its behalf the yard master of the New Orleans & Northwestern Railroad Comany, who from the interchange records of his company, testified that the cattle were received on schedule time and in good condition from appellee at Meridian and promptly shipped to New Orleans. This witness did not keep the books and had no personal knowledge of the facts disclosed by their entries; nevertheless, the entries were read to the jury.''

These records seem to be absolutely the same kind of records that were attempted to be entered in the present case over the objections of the plaintiff, by a witness who did not keep the books and had no personal knowledge of the facts disclosed by their entries.

On this statement of facts Judge WHITFIELD, delivered the opinion of the court in the following language. ''The action of the court in admitting the interchange of records, the private records kept by a private corporation, was manifestly erroneous.''

Judge FLETCHER in 95th Miss. at page 357, delivered the opinion of the court in the following language; ''The judgment obtained by appellee depends in some degree upon the correctness of the book in which the weights of the number were recorded by appellee's weighmaster, one Stillwell. On the trial, although this book was introduced in evidence and used by the witnesses as a basis of computation, the weighmaster was not introduced to show that the book was correctly kept, nor was there any evidence produced which

·would tend to show that the entries were accurate. Indeed, it was stated by the appellee that the weighmaster was in California, and no effort was made to have his deposition taken. While this court has no disposition to be over-technical in regard to the admissibility of books as evidence, yet such evidence cannot be received without competent proof of their correctness. *Railroad Co.* v. *Provine,* 61 Miss. 288. It was error for the court to permit the introduction of this proof.''

So we see from the Provine case in the 61st Miss. down through the case of *Hicks* v. *Lumber Co.,* in 95th Miss. Our court has uniformly held that records kept by private corporations are private memoranda and not entitled to be introduced as evidence except under general rules for the introduction of private memoranda. Our court has never in any way changed the ruling as announced by this court in the above cited cases. If the court should hold that the trial court erred in following these decisions it would have to overrule the law as laid down in these decisions and I do not think there will be any disposition on the part of this court to change the rules of evidence that are universal, not only in Mississippi, but in all the other states.

If the appellant suffered on account of this ruling of the court they suffered on account of their own negligence in not having proper evidence before the court in order to make their private memoranda competent evidence.

They then complain that the court erred in granting a directed verdict for appellee with the record showing that the cotton had been delivered to the carrier at the shipping and never delivered from the carrier at the point of destination. Even had there been evidence to show that this cotton was delivered constructively to the compress by being placed on a side track near

the compress, we state that in our judgment, we still would have been entitled to a peremptory instruction.

The private contract and bond entered into by and between the Grenada Compress Company could not possibly bind Threefoot Brothers as the record fails to disclose at any place that Threefoot Brothers had any knowledge, constructive or otherwise, of the existence of this contract between the railroad company and the compress company and the bond that was given by the compress company according to the proof was to cover cases where people lost their cotton by reason of this constructive delivery as agreed on and would have a ground for action against the railroad company as an insurer until the cotton had been actually delivered. What other reason could there be for giving a bond?

I also wish to call the court's attention to the clause in the special contract, Record page 39, section 10 of the contract, in which the compress company agrees: "to protect, defend and hold the railroad company harmless from any liability, damages, loses, or claims that may arise, except by fire, from the loss or injury or delay of cotton in transit, warehouse cotton, loaded cotton or billed cotton or any part thereof from the time of the delivery to the compress until redelivery to the railroad company of cotton in transit and warehoused cotton." Also section 11, where the language is; "For the purpose of this agreement when cars are placed upon sidetracks used for the compress cotton in or on such cars, shall be considered delivered to the compress, and when cars have been loaded by the compress." Clearly a private agreement contrary to the general law governing the delivery of freight not binding anyone except those that were parties to the contract or he had such knowledge of the contract were brought in connection with the contract we respectfully submit that this record

fails to show as stated before, where Threefoot Brothers, or anyone else connected with the ownership of this cotton, had knowledge or had given their consent to any such argement.

In addition to this, as stated before, the compress never agreed but expressly excepted cotton that could be burned, it being the law of the land that the railroad company when it accepted freight, under its contract agrees that its liability as an insurer shall continue from the time the goods are placed in the hands of the carrier until the cotton has been transported to the point of destination, notice given to the consignee and a reasonable time has elapsed for the delivery of this cotton. In 84th Miss. in the case of *Railroad Company* v. *Horton,* 490, Judge TRULY used this language:

"The liability of a railroad company as a common carrier does not terminate until the freight has reached the point of destination in good order, notice of its arrival has been given to the consigneee, and a reasonable time allowed for its removal. This is the law, irrespective of any custom on the part of the railroad companies. *Alabama & V. Railway Co.* v. *Pounder,* 82 Miss. 568, (S. C. 35 So. 155)."

We call the court's attention especially to the language of Judge TRULY where he says: "This is the law, irrespective of any custom on the part of railroad companies."

Two other cases in regard to this are exactly in line with this statement on the part of Judge TRULY, especially the case of *Gulf & Chicago Railroad Co.* v. *Ferguson-McKinney Dry Goods Co.,* 52 So. 797, Judge MAYES speaking for the court says: "The liability of the carrier as insurer of the goods continues after arrival of the goods at their destination until notice to the consignee and until the consignee has had a reasonable time in which to remove his

goods. All these things may reasonably be said to be within the terms of the contract or carriage."

If the fact of the arrival of the cotton in Holly Springs as is claimed by the railroad company, though not shown in this record, shows that the cotton came the afternoon before the fire and was placed on the side track too late to be unloaded, could anyone say that notice had been given when no notice had been given, and that a reasonable time had elapsed for the unloading of the cotton, consequently unless the decision of the supreme court in regard to the liability of the carrier as insurer, continued as is stated by Judge TRULY and Judge MAYES, until delivery shall be set aside by this court, and overruled, there can possibly be no error in the record before the court. We respectfully submit that there being no error committed by the lower court on any of its rulings that this should be affirmed.

COOK, P. J., delivered the opinion of the court.

The appellee sued the appellant for the value of thirty-one bales of cotton alleged to have been destroyed by fire while they were in the possession of the appellant as a common carrier.

The facts brought out at the trial were that the cotton was delivered to the carrier at Taylor, Miss., to be transported to Holly Springs, and there delivered to the Grenada Compress Company. In other words, the bill of lading shows that the cotton was consigned to the Threefoot Bros. & Co. in the care of the compress company at Holly Springs.

The railroad company offered evidence to show that the cotton had been delivered to the compress company before it was burned. The contract between the compress company and the railroad company, in regard to the delivery of cotton, was that the railroad

company would switch the loaded cars to the side track serving the compress company, and when so placed the compress company accepted the cotton as delivered to it under the contract of carriage. This was the contract, and this was the universal custom.

The numerous objections to all of the evidence offered by the appellant makes it difficult to work out all of the details of fact. We think the books excluded tended to show that the cotton was delivered to the compress company according to the contract and custom. We must accept this evidence as true, inasmuch as the trial judge excluded it all and directed a verdict for the plaintiff. The bill of lading, without a doubt, constituted the compress company the agent of Threefoot Bros. & Co. to receive the shipment. It does not appear whether the cotton was to be compressed or simply stored, but it does appear that the compress company was the agent of Threefoot Bros. & Co. to accept delivery.

The evidence tended to show a delivery of the cotton to the compress company before it was burned. This being true, it follows that the peremptory instruction to find for the plaintiff was error. We do not deem it necessary to discuss the detailed assignments of error.

On a retrial of the case, the question as to the admissibility of the books of the railroad company may or may not present difficulties. The bookkeeper may be present to testify; if so, the precise point argued on this appeal would not arise.

There was enough evidence to carry the case to the jury.

*Reversed and remanded.*